UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES H.M.S. SEXTON, | 1:24-CV-8895 (DEH) |
| Plaintiff, | ORDER OF SERVICE |
| -against- | |
| DEPARTMENT OF HOMELESS SERVICES, et al., | |
| Defendants. | |

DALE E. HO, United States District Judge:

Plaintiff Charles H.M.S. Sexton, who is appearing *pro se*, filed this action asserting claims for damages, injunctive relief, and declaratory relief under 42 U.S.C. § 1983, the Fair Housing Act ("FHA") of 1968, the Americans with Disabilities Act of 1990 ("ADA"),[1] the Health Insurance Portability and Accountability Act ("HIPAA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), claims under federal criminal statutes including 18 U.S.C. §§ 1701, 1702, and 1708, as well as claims under state law, including claims under the New York State Human Rights Law. The Court construes Plaintiff's complaint as asserting additional claims under the Rehabilitation Act of 1973, 42 U.S.C. § 1981, and the New York City Human Rights Law.

Plaintiff has filed several motions currently pending before this Court. Specifically, the Court must adjudicate Plaintiff's:

- Motion for the Appointment of Counsel, ECF No. 10;

- Motion for "pre-discovery to turn over and preserve evidence under court supervision," ECF No. 9;

- Motion "to transfer venue to the Southern District of New York," ECF No. 14;

---

[1] The Court understands that Plaintiff's claims that are brought under the ADA are brought under Title II of the ADA.

- Motions "to compel and expedite ruling on venue transfer, service of process, and outstanding motion, and to remedy procedural obstruction," [2] ECF No.16, 19, and 20;

- Letter "request for an expedited case status update and judicial action," ECF No. 15

Plaintiff brings his claims against: (1) the New York City Department of Homeless Services ("DHS"); (2) the Creston Men's Shelter, a homeless shelter located in the Bronx, New York, that is operated by the Volunteers of America ("VOA"); (3) Help USA, a private social-services organization; (4) the VOA, a private social-services organization; (5) the "Dept. of Human Services Ombudsman's Office," which the Court understands to be New York City Department of Social Services's Office of the Ombudsman ("DSS Ombudsman Office"); (6) the Willow Men's Shelter, a privately operated homeless shelter located in the Bronx, New York; (7) Westhab, Inc. ("Westhab"), a private corporation that operates the Willow Men's Shelter; (8) the Union Hall Safe Haven shelter, which appears to be a homeless shelter located in Jamaica, Queens County, New York; (9) Project Renewal, a private social-services organization that, Plaintiff alleges, operates the Union Hall Safe Haven shelter; (10) Breaking Ground, a private social-services organization that, Plaintiff alleges, along with Project Renewal, operates the Union Hall Safe Haven shelter; (11) "Tarian Security," which the Court understands to be the Tarian Group, LLC ("Tarian"), a private security firm that provides security for at least one of the homeless shelters mentioned above; (12) "New York City Mayor's Operations," which the Court understands to be the New York City Mayor's Office of Operations ("Mayor's Ops."); (13) "Brad Lander

---

[2] In an order dated December 20, 2024, the court denied Plaintiff's order to show cause for a preliminary injunction and a temporary restraining order ("OTSC") and motion for a preliminary injunction and temporary restraining order, and granted Plaintiff's motions for permission for electronic filing. (ECF No. 13.) In that order, the court indicated that it would explain why it denied the OTSC and motion for a preliminary injunction and a temporary restraining order at a later date. (*Id.* at 2.)

Comptroller's Office," which the Court understands to be Office of the New York City Comptroller; (14) "Lander," which the Court understands to be New York City Comptroller Brad Lander; (15) "Thomas," a supervisor in the Office of the New York City Comptroller; (16) "Howl," a claims examiner in the Office of the New York City Comptroller; (17) "Halima," a caseworker at the Creston Men's Shelter; (18) "Harrison," a caseworker at the Creston's Men's Shelter; (19) "Doss," a director at the Creston Men's Shelter; (20) "McBride," an assistant director at the Creston Men's Shelter; (21) "Batters," a member of the security personnel at the Creston Men's Shelter; (22) "Rivera," a member of the security personnel at the Creston Men's Shelter; (23) "Martinez," a member of the security personnel at the Creston Men's Shelter; (24) "Coleman," a safety coordinator at the Creston Men's Shelter; (25) "Rogers," a director at the Willow Men's Shelter; (26) "Robinson," an assistant director at the Willow Men's Shelter; (27) "Henderson," a member of the security personnel at the Willow Men's Shelter; (28) "Kuku," a member of the security personnel at the Union Hall Safe Haven shelter; (29) "Mohammad," a member of the security personnel at the Willow Men's Shelter; (30) "Diawara," a member of the security personnel at the Willow Men's Shelter; (31) "Miller," a member of the security personnel at the Willow Men's Shelter; (32) "Grayman," a member of the security personnel at the Willow Men's Shelter; (33) "Williams," a caseworker at the Willow Men's Shelter; (34) "Frias," a caseworker at the Willow Men's Shelter; (35) "Hernandez," an employment specialist at the Willow Men's Shelter; (36) "Holt," a member of the security personnel at the Willow Men's Shelter; (37) "Campbell," a member of the security personnel at the Willow Men's Shelter; (38) "Vargas," a director of the DSS Ombudsman Office; (39) "Patterson," supervisor at the DSS Ombudsman Office; (40) "Seldon," a security supervisor at the Willow Men's Shelter; (41) "Derosin," an administrative ombudsman specialist at the DSS Ombudsman Office; (42)

"Nantongo," a supervisor at the DSS Ombudsman Office; (43) "Malinado," a director at the Union Hall Safe Haven shelter; (44) "Wells," an assistant director at the Union Hall Safe Haven shelter; (45) "David" or "Davis," a supervisor at the Union Hall Safe Haven shelter; (46) "Hutchinson," a member of the security personnel at the Union Hall Safe Haven shelter; (47) "Ogunvale," a case manager at the Union Hall Safe Haven shelter; (48) "James," a member of the maintenance personnel at the Union Hall Safe Haven shelter; (49) "Kevin," a member of the maintenance personnel at the Union Hall Safe Haven shelter; (50) "Adams," who appears to be the Mayor of the City of New York, Eric Adams; (51) unidentified "John Doe" Defendants, including (a) a member of the security personnel at the Creston Men's Shelter; (b) a maintenance supervisor at the Union Hall Safe Haven shelter; (c) a member of the maintenance personnel at the Union Hall Safe Haven shelter; (d) multiple members of the security personnel at the Union Hall Safe Haven shelter; (e) a case manager at the Union Hall Safe Haven shelter; (f) a claims examiner in the Office of the New York City Comptroller; and (g) a receptionist in the Office of the New York City Comptroller. Plaintiff sues the individual Defendants in the individual and official capacities.

By order dated December 3, 2024, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. *See* ECF No. 3. Because Plaintiff may have alleged facts sufficient to state claims of discrimination and/or retaliation under the FHA and/or Section 1981 against Defendants McBride, Henderson, David or Davis, the VOA, Westhab, Project Renewal, and Breaking Ground, the Court directs service on those Defendants. For the reasons discussed below, however, the Court **DISMISSES** the remainder of Plaintiff's claims under federal law and denies Plaintiff's pending motions and request.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a

defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009),[3] and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). But the "special solicitude" in *pro se* cases, *id*. at 475, has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure,[4] which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

---

[3] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[4] All subsequent references to Rules are to the Federal Rules of Civil Procedure.

## DISCUSSION

### A.    Plaintiff's motion to transfer venue

Plaintiff's Motion to Transfer Venue to this court, the United States District Court for the Southern District of New York, is **DENIED AS MOOT**. Plaintiff filed this action in the Southern District of New York. Accordingly, the Plaintiff's Motion to Transfer is unnecessary. This Motion is **DENIED**.

### B.    Claims on behalf of others

To the extent that Plaintiff asserts claims *pro se* on behalf of others, including other homeless residents of the shelters mentioned above, those claims are **DISMISSED**. The statute governing appearances in federal court, 28 U.S.C. § 1654, "allow[s] two types of representation: 'that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself.'" *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)). A nonlawyer cannot bring suit on behalf of another person. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). Plaintiff does not allege that he is an attorney. Thus, the Court **DISMISSES WITHOUT PREJUDICE** any claims that Plaintiff asserts on behalf of others.

### C.    Private prosecution

Plaintiff appears to seek the criminal prosecution of at least some Defendants, including under 18 U.S.C. §§ 1701, 1702, and 1708. The Court must **DISMISS** these claims. Plaintiff cannot initiate a criminal prosecution in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the federal criminal prosecution of others,

*see Linda R.S. v. Richard D.*, 410 U.S. 614, 618-19 (1973), the Court **DISMISSES** any claims in which Plaintiff seeks the federal criminal prosecution of anyone, including the Defendants, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim.").

**D.    Plaintiff's claims under HIPAA, Title VII, Title II of the ADA, and the Rehabilitation Act**

The Court must **DISMISS** Plaintiff's claims under HIPAA, Title VII, Title II of the ADA, and the Rehabilitation Act. HIPAA does not provide a private right of action. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020). "Title VII protects all employees of and applicants for employment with a covered employer, employment agency, labor organization, or training program against discrimination based on race, color, religion, sex, or national origin." *Gen. Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318, 323 (1984); *see* 42 U.S.C. §§ 2000e, 2000e-1, 2000e-2, 2000e-3. Title II of the ADA "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability." *Penn. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. § 12132). The Rehabilitation Act provides virtually identical anti-discrimination protections with respect to the federal government's executive agencies, the United States Postal Service, and programs or activities receiving federal funding. *See* 29 U.S.C. § 794(a).

Plaintiff alleges no facts to support claims brought under Title VII, Title II of the ADA, and the Rehabilitation Act. The Court therefore **DISMISSES** Plaintiff's claims under HIPAA, as well as his claims under Title VII, Title II of the ADA, and the Rehabilitation Act, for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**E.    Claims against the City-agency Defendants and his claims under 42 U.S.C. § 1983 against the City-officer Defendants in their official capacities**

The Court understands Plaintiff to assert claims against New York City agencies, including the DHS, the DSS Ombudsman Office, Mayor's Ops, and the Office of the New York City Comptroller. The Court also understands Plaintiff to asset claims of federal constitutional violations, under 42 U.S.C. § 1983, against New York City officers (Defendants Patterson, Derosin, Nantongo, Vargas, Adams, Lander, Thomas, Howl, a "John Doe" claims examiner in the New York City Comptroller's Office, and a "John Doe" receptionist in the New York City Comptroller's Office) in their official capacities. These claims are **DISMISSED**.

Agencies of the City of New York, including those named as Defendants in this action, are not entities that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter*." (emphasis in original)); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). In addition, with respect to claims against municipal officers brought under Section 1983 in their official capacities, such claims are properly brought against the municipality itself. *See Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself."); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials . . . [because] local government units can be sued directly for damages and injunctive or declaratory relief.").

The Court therefore **DISMISSES** Plaintiff's claims against the New York City-agency Defendants, and Plaintiff's claims under Section 1983 against the New York City-officer Defendants in their official capacities, for failure to state a claim under on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court understands such claims as brought against the City of New York itself under Section 1983. The Court will discuss such claims in the next subsection.

## F.    Claims under Section 1983 against the City of New York

The Court **DISMISSES** Plaintiff's claims under Section 1983 against the City of New York. When a plaintiff sues a municipality, like the City of New York, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipal entity itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dept of Soc. Servs*., 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal or other local government entity policy, custom, or practice, and; (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).

A plaintiff may satisfy the policy or custom requirement by alleging one of the following:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread

> that, although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policymakers
> to provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of the those who come into contact
> with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010). If there is no

underlying constitutional violation, however, the Court need not examine whether the municipality

is liable under Section 1983. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Plaintiff alleges no facts showing that a policy, custom, or practice of the City of New York

caused a violation of his federal constitutional rights. Therefore, the Court **DISMISSES** Plaintiff's

claims under Section 1983 against the City of New York for failure to state a claim on which relief

may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however,

the Court grants Plaintiff leave to replead these claims in an amended complaint in which he names

the City of New York (and not a New York City agency) as a Defendant, and in which he alleges

facts sufficient to state a claim under Section 1983 against the City of New York. Such claims

should not include any that arise, as discussed in this order, from a purported right to housing or

to a right to protect and to investigate, as discussed below. *See Segal*, 459 F.3d at 219; *supra* at

10-12.

## G.    No right to housing

The Court reads Plaintiff's Complaint as asserting that at least some of the Defendants

violated Plaintiff's purported federal constitutional right to safe and sanitary housing. But there is

no right under the United States Constitution to housing generally (or, for that matter, to safe and

sanitary housing specifically). *See generally Lindsey v. Normet*, 405 U.S. 56, 74 (1972) ("We do

not denigrate the importance of decent, safe, and sanitary housing. But the Constitution does not

provide judicial remedies for every social and economic ill. We are unable to perceive in that

document any constitutional guarantee of access to dwellings of a particular quality. . . .").

Accordingly, no government entity, including the City of New York, has any "obligation to provide adequate housing." *Richardson v. City of New York*, No. 12 Civ. 2545, 2013 WL 2124176, at *2 (S.D.N.Y. Apr. 17, 2012). Thus, to the extent that Plaintiff asserts claims of federal constitutional violations under Section 1983, against the City of New York and/or any New York City-officer Defendants in his/her individual capacity, arising from a violation of a purported federal constitutional right to housing or to safe and sanitary housing, such claims are **DISMISSED** for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### H.    No duty to protect or investigate

Plaintiff appears to assert Section 1983 claims against the City of New York and New York City-officer Defendants in their individual capacities on the bases of those Defendants allegedly failing to protect Plaintiff, or investigate his concerns and grievances, regarding the alleged conditions and events that occurred in the Creston Men's Shelter, the Willow Men's Shelter, and the Union Hall Safe Haven shelter. There is generally no federal constitutional duty, however, requiring a government official to investigate or protect an individual from harm. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Gong v. Sarnoff*, No. 23 Civ. 0343, 2024 WL 3638335, at *7 (S.D.N.Y. Aug. 1, 2024) ("It is settled that the State has no general Due Process obligation to ensure the safety, care, and protection of individuals who are not in its custody. Also, [i]t is well established that [t]here is no constitutional right to an investigation by government officials." (internal quotation marks and citations omitted, alterations in original)); *see also Baltas v. Jones*, 21 Civ. 0469, 2021 WL 6125643, at *14 (D. Conn. Dec. 27, 2021) (The plaintiff "has no 'constitutional right to an investigation of any kind by government officials.'"); *Buari v. City of New York*, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) ("[T]here is no constitutional right to an

adequate investigation. . . . Accordingly, a failure to investigate is not independently cognizable as a stand-alone claim under Section 1983.").

There are two recognized exceptions to this general rule: (1) "when [a government official] takes a person into [the government official's] custody and holds him there against his will, the Constitution imposes upon [the government official] a corresponding duty to assume some responsibility for his safety and general well-being," *DeShaney*, 489 U.S. at 199-200; and (2) when a state actor affirmatively creates or increases a danger to the plaintiff, *see, e.g.*, *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). In this context, the plaintiff must also show that the government official's "behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.*

Plaintiff does not allege that the City of New York or any New York City-officer Defendants took him into custody. He also does not allege that any of those Defendants themselves affirmatively created or increased a danger to him. In addition, Plaintiff alleges nothing to suggest that any of those Defendants' alleged behavior was so egregious or outrageous as to shock the contemporary conscience. Plaintiff's claims against those Defendants, brought under Section 1983, and arising from their alleged failure to protect Plaintiff and investigate his concerns and grievances, are therefore **DISMISSED** for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

I.    **Claims under Section 1983 against the shelters and the private Defendants**

Plaintiff's claims under Section 1983 against the shelters named as Defendants (the Creston Men's Shelter, the Willow Men's Shelter, and the Union Hall Safe Haven shelter), as well as his claims under Section 1983 against the private Defendants (Help USA, the VOA, Westhab, Project Renewal, Breaking Ground, Tarian, Doss, McBride, Halima, Harrison, Batters, Rivera, Coleman, Martinez, a "John Doe" security personnel member at the Creston Men's Shelter, Rogers,

Robinson, Henderson, Mohammad, Diawara, Miller, Grayman, Holt, Campbell, Seldon, Williams, Hernandez, Frias, Malinado, Wells, Davis or David, Hutchinson, Kuku, Ogunvale, James, Kevin, and the "John Doe" maintenance supervisor and maintenance personnel, as well as the "John Doe" security personnel and a case manager at the Union Hall Safe Haven shelter) are also **DISMISSED**.

A claim for relief under Section 1983 must allege facts showing that a defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows*, 963 F.3d at 243 ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor." (internal quotation marks and citation omitted, emphasis in original)).

A homeless shelter is not a "person" for the purposes of Section 1983 liability. *Reeves v. Akinwunmi*, No. 07 Civ. 4964, 2008 WL 558710, at *2 (E.D.N.Y. Mar. 3, 2008); *see Spooner v. Rose M. Singer Ctr.*, No. 24 Civ. 8621, 2025 WL 753956, at *1 (S.D.N.Y. Mar. 10, 2025) ("The Court must dismiss Plaintiff's claims against [the Rose M. Singer Center], which is a building located on Rikers Island, because it is not a 'person' that may be sued under Section 1983."). Accordingly, the Court **DISMISSES** Plaintiff's claims under Section 1983 against the Creston Men's Shelter, the Willow Men's Shelter, and the Union Hall Safe Haven shelter for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In addition, private entities are not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . ." (internal quotation marks and citations omitted)). The activity of a private entity may be considered to be state action for the purpose of Section 1983 liability, however, in the following three situations: (1) when the entity acts using the coercive power of the State or municipality or is controlled by the State or municipality (the "compulsion test"); (2) when the State or municipality provides significant encouragement to the entity, the entity willfully participates in joint activity with the State or municipality, or the entity's functions are entwined with State or municipal policies (the "joint action" or "close nexus" test); or (3) when the State or municipality has delegated a public function to the entity (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted). Thus, a private security officer can be considered to be a state actor if he or she has been deputized with police powers by the State or a municipality. *See Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (private security officer who was deputized by the City of New York as a Special Police Officer, but employed by a private department store, was considered to be a state actor for the purpose of Section 1983). In addition, "[p]rivate employers . . . [can be] liable under § 1983 for the constitutional torts of their [state actor] employees, . . . [but only if] the plaintiff proves that 'action pursuant to official . . . policy of some nature caused a constitutional tort.'" *Id.*

The fundamental question under each test is whether the private entity's challenged actions are "'fairly attributable'" to the State or municipality. *Fabrikant*, 691 F.3d at 207 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). In analyzing whether a private entity has acted as a

state actor for the purpose of Section 1983 liability, a court must first "identify[ ] the specific conduct of which the plaintiff complains, rather than consider the general characteristics of the entity." *Id.* The fact that an entity receives public funds does not turn private action into state action, and acts of private contractors do not become acts of the government because of the contractors' engagement in government contracts. *See Rendell-Baker*, 457 U.S. at 840-41. Furthermore, a private entity does not become a state actor merely by acting in accordance with state regulations. *See id.* at 841. Thus, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

Courts have held that "[t]he provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors." *Williams v. B.R.C. of New York*, No. 25 Civ. 0663, 2025 WL 446237, at *2 (E.D.N.Y. Feb. 10, 2025); *Smith v. Westhab Traverse House*, No. 24 Civ. 4961, 2025 WL 26067, at *3 (S.D.N.Y. Jan. 2, 2025) (Westhab shelter and employees not state actors); *Levine v. Project Renewal*, 24 Civ. 0616, 2024 WL 773722, at *5 (S.D.N.Y. Feb. 26, 2024) (Project Renewal not a state actor); *Cora v. Shelter*, No. 24 Civ. 0328, 2024 WL 308248, at *3 (E.D.N.Y. Jan. 26, 2024) (Westhab and its employees not state actors); *Syville v. City of New York*, No. 22 Civ. 8009, 2023 WL 8258020, at *6 (S.D.N.Y Nov. 29, 2023) (noting that Help USA is a private social-services organization that operates a homeless shelter funded by the City of New York, and that its employee is not a state actor); *Hill v. N.Y.C. Shelter Sys.*, No. 22 Civ. 7350, 2023 WL 2143641, at *2 (S.D.N.Y. Feb. 17, 2023) (VOA employees not state actors). Thus, Plaintiff's claims under Section 1983 against Help USA, the VOA, Westhab, Breaking Ground, Project Renewal, Doss, McBride, Halima, Harrison, Rogers, Robinson, Williams, Hernandez, Frias,

Malinado, Wells, David or Davis, Ogunvale, James, Kevin, and the "John Doe" maintenance supervisor, maintenance personnel, and case manager at the Union Hall Safe Have shelter, are **DISMISSED** for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In addition, because Plaintiff has alleged no facts showing that any of the other private Defendants allegedly involved with the security of the abovementioned shelters (Tarian, Batters, Rivera, Coleman, Martinez, a "John Doe" member of the Creston Men's Shelter security personnel, Henderson, Mohammad, Diawara, Miller, Grayman, Holt, Campbell, Seldon, Hutchinson, Kuku, and the "John Doe" members of the Union Hall Safe Haven shelter's security personnel) were state actors when they allegedly violated Plaintiff's federal constitutional rights, the Court also **DISMISSES** Plaintiff's claims under Section 1983 against these Defendants for the same reason. *See id.* In light of the possibility that at least some of these individual Defendants, as security personnel, may be considered state actors if they have been deputized by the State or the City of New York, however, *see Rojas*, 924 F.2d at 408, and may have been employed by Tarian, a private security firm, the Court grants Plaintiff leave to replead his claims under Section 1983 against these individual Defendants in an amended complaint in which he alleges facts showing that they were state actors when they allegedly violated his federal constitutional rights. The Court also grants Plaintiff leave to replead his claims under Section 1983 against Tarian, if it was any of these Defendants' employer at the time of the alleged incidents, to allege facts showing that Tarian caused such violations due its policies. *See id.*

**J.     Claims under Section 1983 against the individual New York City-officer Defendants in their individual capacities**

Plaintiff's claims under Section 1983 against the individual New York City-officer Defendants in their individual capacities are **DISMISSED**. To state a claim under Section 1983

against an individual state-actor defendant in their individual capacity, a plaintiff must allege facts showing that individual state-actor defendant's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983."). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under [Section] 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff alleges nothing to suggest that any of the New York City-officer Defendants (Defendants Patterson, Derosin, Nantongo, Vargas, Adams, Lander, Thomas, Howl, a "John Doe" claims examiner in the New York City Comptroller's Office, and a "John Doe" receptionist in the New York City Comptroller's Officer) were themselves directly and personally involved with any of the alleged federal constitutional violations. The Court therefore **DISMISSES** Plaintiff's claims under Section 1983 against these Defendants for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead his claims under Section 1983 against these Defendants, in their individual capacities, in an amended complaint in which he alleges facts showing how each of these Defendants was directly and personally involved with the alleged violations of his federal constitutional rights.

**K.**    **Order to show cause for a preliminary injunction and a temporary restraining order and motion for a preliminary injunction and a temporary restraining order**

In an order dated December 20, 2024, the court denied Plaintiff's order to show cause for a preliminary injunction and a temporary restraining order ("OTSC") and his motion for a preliminary injunction and a temporary restraining order ("motion"); the court informed Plaintiff that it would issue an explanatory order at a later date. (ECF No. 13, at 2.) The court held that Plaintiff's OTSC, motion, and the memorandum in support of that motion, did not show a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. (*Id.*) Plaintiff sought, in his OTSC, motion, and supporting memorandum, an order from the court directing the Defendants not to: (1) destroy, alter, conceal, or tamper with evidence; (2) engage in harassment, intimidation, or retaliation against him; and (3) approach or contact him, that is, order them to maintain a distance of at least 1,000 feet from him. (ECF No. 4-6.)

Plaintiff, who filed his complaint, OTSC, motion, and supporting memorandum while no longer housed in any of the shelters that are the subject of this action, alleges nothing in any of these submissions suggesting that, at the time that he commenced this action, there was any indication that the Defendants were or were going to: (1) alter(ing), conceal(ing), or tamper(ing) with any potential evidence; (2) engage (or engaging) in harassment, intimidation, or retaliation against Plaintiff; and (3) approach(ing) him or contact(ing) him. Because of that, the OTSC, motion, and supporting memorandum do not demonstrate a likelihood of successes on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in Plaintiff's favor. Accordingly, Plaintiff is not entitled to any of the preliminary injunctive relief he seeks. *See Ning Ye v. N.Y. Bd. of Elections*, No. 20 Civ. 11072, 2021 WL 37575, at *3 (S.D.N.Y. Jan. 5, 2021) ("[The plaintiff's] petition for a TRO

offers no cogent explanation of the bases for any of these alleged causes of action, and falls well short of establishing a likelihood of success on the merits of those causes of action. Instead, [the] petition for a TRO amounts to a string of conclusory assertions and unsupported speculation."); *Convergen Energy WI, LLC v. L'Anse Warden Elec. Co., LLC*, No. 20 Civ. 5240, 2020 WL 5894079, at *5 (S.D.N.Y. Oct. 5, 2020) ("[C]onclusory allegations lacking supporting evidence will not support a preliminary injunction." (internal quotation marks and citations omitted)); *Viamedia, Inc. v. WideOpenWest Finance, LLC*, 20 Civ. 4064, 2020 WL 3415356, at *2 (S.D.N.Y. June 22, 2020) ("Conclusory statements . . . are insufficient to support the drastic relief of a TRO.").

**L.      Motion for the appointment of counsel**

The Court must, at this time, deny Plaintiff's motion for the appointment of counsel. (ECF No. 10.) The factors to be considered in ruling on an indigent litigant's request for counsel include the merits of the case, his efforts to obtain a lawyer, and his ability to gather the facts and present the case if unassisted by counsel. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *Hodge v. Police Officers*, 802 F.2d 58, 60-62 (2d Cir. 1986). Of these, the merits is "[t]he factor which command[s] the most attention." *Cooper*, 877 F.2d at 172. Even if a court does believe that a litigant should have a free lawyer, under the IFP statute, a court has no authority to "appoint" counsel, but instead, may only "request" that an attorney volunteer to represent a litigant. *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 301-10 (1989).

Because it is too early in the proceedings for the Court to assess the merits of Plaintiff's claims, the Court denies Plaintiff's motion for the appointment of counsel without prejudice to Plaintiff's filing an application for the Court to request *pro bono* counsel at a later date.

**M.     Service on Defendants McBride, Henderson, David or Davis, the VOA, Westhab, Project Renewal, and Breaking Ground**

Because Plaintiff may have alleged sufficient facts to state claims of discrimination and/or retaliation under the FHA and/or Section 1981 with respect to Defendants McBride, Henderson, David or Davis, the VOA, Westhab, Project Renewal, and Breaking Ground, the Court directs service on those Defendants. Because Plaintiff has been granted permission to proceed IFP, he is entitled to rely on assistance from the Court and the United States Marshals Service ("USMS") to effect service.[5] *Walker v. Schult*, 717 F.3d. 119, 123 n.6 (2d Cir. 2013); *see also* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process . . . in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) (the court must order the USMS to serve if the plaintiff is authorized to proceed IFP).

To allow Plaintiff to effect service on McBride, Henderson, David or Davis, the VOA, Westhab, Project Renewal, and Breaking Ground through the USMS, the Clerk of Court is instructed to fill out a USMS Process Receipt and Return form ("USM-285 form") for each of these Defendants. The Clerk of Court is further instructed to issue summonses for these Defendants and deliver to the USMS all the paperwork necessary for the USMS to effect service of a summons and the complaint upon each of these Defendants.

If a summons and the complaint is not served on each of these Defendants within 90 days after the date that the summonses for these Defendants are issued, Plaintiff should request an

---

[5]Although Rule 4(m) of the Federal Rules of Civil Procedure generally requires that a summons be served within 90 days of the date the complaint is filed, Plaintiff is proceeding IFP and could not have effected service on McBride, Henderson, David or Davis, the VOA, Westhab, Project Renewal, and Breaking Ground until the Court reviewed the complaint and ordered that any summonses be issued. The Court therefore extends the time to serve these defendants until 90 days after the date that any summonses for these defendants issue.

extension of time for service. *See Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012) (holding that it is the plaintiff's responsibility to request an extension of time for service).

Plaintiff must notify the Court in writing if his address changes, and the Court may dismiss this action if he fails to do so.

## CONCLUSION

For the reasons explained above, Plaintiff's various claims are **DISMISSED**. Specifically:

- Plaintiff's Motion for the Appointment of Counsel, ECF No. 10, is **DENIED WITHOUT PREJUDICE** to Plaintiff's filing an application for the court to request *pro bono* counsel at a later date.

- Plaintiff Motion to Transfer Venue, ECF No. 14, letter request to expedite this action, ECF No. 15, and his Motions to Compel and Expedite a Ruling, ECF Nos. 16, 19, & 20, are **DENIED AS MOOT**.

- Plaintiff's Motion for pre-discovery, ECF No. 9, is **DENIED WITHOUT PREJUDICE** as premature and unnecessary. Plaintiff may seek such relief again in the future, as permitted by Rules 26 and 34 of the Federal Rules of Civil Procedure, after the Defendants to be served are served.

The Court grants Plaintiff 30 days' leave to replead his claims under Section 1983 against the City of New York, the New York City-officer Defendants, and the security-personnel Defendants, as specified above, in an amended complaint. Plaintiff shall file any such amended complaint by **June 6, 2025**. The Court notes that any amended complaint filed will completely replace, not supplement, Plaintiff's original Complaint. Thus, any content from the original complaint that Plaintiff wishes to maintain must be included in the amended complaint.

Based on the foregoing, and because Plaintiff may have alleged sufficient facts to state claims of discrimination and/or retaliation under the FHA and/or Section 1981 with respect to the remaining Defendants, the Clerk of Court is respectfully directed to:

- Mail an information package to Plaintiff;

- Terminate all of the Defendants from the docket of this action <u>except for</u> Defendants McBride, Henderson, David or Davis, the Volunteers of America, Westhab, Inc., Project Renewal, and Breaking Ground;

- Issue summonses for McBride, Henderson, David or Davis, the Volunteers of America, Westhab, Inc., Project Renewal, and Breaking Ground;

- Complete USM-285 forms with the service addresses for these Defendants;

- Deliver all documents necessary to effect service of a summons and the complaint on each of these Defendants to the USMS.

- Terminate ECF Nos. 9, 10, 14, 16, 18, 19, and 21.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

\* \* \*

Plaintiff is advised that there is a Pro Se Law Clinic available to assist self-represented parties in civil actions. The clinic may be able to provide Plaintiff with advice in connection with his action. The Pro Se Law Clinic is run by a private organization called the City Bar Justice Center; it is not part of, or run by, the court (and, among other things, therefore cannot accept filings on behalf of the court, which must still be made by any self-represented party through the court's Pro Se Intake Unit).

To make an appointment, Plaintiff must complete the City Bar Justice Center's intake form. If Plaintiff has questions about the intake form or needs to highlight an urgent deadline already disclosed in the form, the clinic can be contacted by phone (212-382-4794) or email (fedprosdny@nycbar.org). In-person appointments in the Thurgood Marshall Courthouse in

Manhattan and the Charles L. Brieant Jr. Federal Building and Courthouse in White Plains are available Monday through Thursday, 10am to 4pm. Appointments are also available remotely Monday through Friday, 10am to 4pm.

SO ORDERED.

Dated:    May 7, 2025
         New York, New York

                                          DALE E. HO
                            United States District Judge

**SERVICE ADDRESS FOR EACH DEFENDANT**

1.    Assistant Director McBride
      Creston Men's Shelter
      2388 Creston Avenue
      Bronx, New York 10468

2.    Security Guard Henderson
      Willow Men's Shelter
      781 East 135th Street
      Bronx, New York 10454

3.    Supervisor David or Davis
      Union Hall Safe Haven shelter
      160-01 Archer Avenue
      Jamaica, New York 11433

4.    Westhab, Inc.
      8 Bashford Street
      Yonkers, New York 10701

5.    Volunteers of America
      135 West 50th Street, 9th Floor
      New York, New York 10020

6.    Project Renewal
      200 Varick Street, 9th Floor
      New York, New York 10014

7.    Breaking Ground
      505 Eighth Avenue, 5th Floor
      New York, New York 10018