**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X
CHARLES H.M.S. SEXTON I,

Plaintiff,

-against-

DEPARTMENT OF HOMELESS SERVICES, *et al.*,

Defendants.
---------------------------------------------------------------------X

**24 Civ. 8895 (DEH) (GS)**

**OPINION & ORDER**

**GARY STEIN, United States Magistrate Judge:**

Before the Court are three motions by Plaintiff Charles H.M.S. Sexton ("Plaintiff" or "Sexton") related to his efforts to effectuate service upon three individual defendants named in this action. (Dkt. Nos. 94, 103, 133). These motions are resolved as set forth below.

## BACKGROUND

Plaintiff brings this action *pro se* and *in forma pauperis*. His efforts to effectuate service began in May 2025, approximately six months after the filing of his Complaint, following an Order of Service issued by Judge Ho on May 7, 2025. (Dkt. No. 22).

In the Order of Service, Judge Ho dismissed most of the claims asserted in the Complaint, and most of the defendants named in the Complaint, but allowed Plaintiff to proceed with certain claims against (1) Defendants Volunteers of America ("VOA"), Westhab, Inc. ("Westhab"), Common Ground Management Corp. d/b/a Breaking Ground ("Breaking Ground"), Project Renewal, Inc. ("Project

Renewal"), which were alleged to have operated the three shelters that housed Sexton during the relevant time period, and (2) Defendants Jane Doe McBride ("McBride"), John Doe Henderson ("Henderson"), and John Doe David/Davis ("David") (collectively, the "Individual Defendants"), who were alleged to have worked at the shelters during that period.[1] (*Id.* at 7–17, 20).

In light of Sexton's *in forma pauperis* ("IFP") status, the Order of Service noted that Sexton was entitled to the assistance of the Court and the U.S. Marshals Service ("USMS") to effect service on these seven defendants. (*Id.* at 20). Judge Ho directed the Clerk of Court to issue summonses as to these Defendants and send the necessary paperwork to the USMS. (*Id.*). Judge Ho explained that "[i]f a summons and the complaint is not served on each of these Defendants within 90 days after the date that the summonses for these Defendants are issued, Plaintiff should request an extension of time for service." (*Id.* at 20–21). Summonses were issued on May 9, 2025, which meant that the 90-day period for service ended on August 7, 2025. (Dkt. No. 24)

On July 17, 2025, two USM-285 forms were filed on the docket showing that the USMS was unable to effect service on Henderson and McBride. (Dkt. Nos. 48, 50). The form related to McBride stated: "Does not work at location or DHS [the New York City Department of Homeless Services]." (Dkt. No. 48). The form for

---

[1] VOA is alleged to have operated Creston Men's Shelter, where McBride worked during the relevant period. (Dkt. No. 1 ("Compl.") at 5, 6). Westhab is alleged to have operated Willow Men's Shelter, where Henderson worked. (*Id.* at 5, 7). Breaking Ground and Project Renewal are jointly alleged to have operated Union Hall Safehaven Shelter ("Union Hall"), where David worked. (*Id.* at 5, 8).

Henderson stated "[d]oes not work at location or DHS" and that the summons and complaint mailed to Henderson was returned as undeliverable. (Dkt. No. 50). Five days later, on July 22, 2025, Sexton filed a motion to compel requesting, *inter alia*, that the Court "[o]rder the U.S. Marshal to effect immediate service" upon the Individual Defendants, and "[o]rder the [nonparties] City of New York, DHS, DOCCS, or relevant public agency employer(s) to provide, under seal, the last known home and/or work addresses of each unserved defendant(s) to facilitate service." (Dkt. No. 54 ("First Motion to Compel") at 2).

Two months later, on September 19, 2025, a USM-285 form was filed on the docket showing that the service documents for David were accepted by "Matthew Marrero," an administrative assistant at the shelter that allegedly employed David. (Dkt. No. 68). David, however, has not appeared in this action, and as discussed below, this attempt at service was ineffective.

On November 13, 2025, Plaintiff submitted a second motion to compel service on McBride (now identified as Kimberly McBride) and Henderson. (Dkt. No. 94 ("Second Motion to Compel") at 1). In that motion, Plaintiff argues that he "fulfilled every obligation required to enable service, including providing the names and workplaces of both Defendants," and that the barrier to service is "the intentional withholding of identifying information by shelter-operating defendants who are actively participating in litigation." (*Id.* at 2). Consequently, he requests that the Court order the "shelter-operating Defendants"—namely VOA and Help USA in the case of McBride, and Westhab in the case of Henderson—to disclose "the last known

work location or business address necessary for the U.S. Marshals Service to effect service." (*Id.* at 1, 3). Sexton further asserts that once he was granted IFP status, the "legal responsibility for service shifted to the Court and the U.S. Marshals, not the Plaintiff." (*Id.* at 2). Plaintiff, therefore, should not "be punished for obstruction caused by Defendants who are using service failure as a shield against accountability." (*Id.*). Westhab responded to Plaintiff's motion that same day. (*See* Dkt. No. 98). VOA did not respond.

On February 1, 2026, Plaintiff filed a third motion to compel seeking five different forms of relief related to his attempts to serve David. (Dkt. No. 103 ("Third Motion to Compel")). First, Sexton requests that the Court declare service defective because the service documents were accepted by Marrero and not personally served upon David. (*Id.* at 1–2). Second, Plaintiff requests that the Court order the "U.S. Marshals to effectuate proper re-service" on David. (*Id.* at 3). Third, Plaintiff asks for the Court to compel Project Renewal and Breaking Ground to provide Plaintiff with identifying information related to David, claiming that "these represented entities are in control of employment records and are in active litigation." (*Id.* at 2). Fourth, Plaintiff asks for the Court to declare that "the prolonged delay in service has violated [his] Due Process rights" under the U.S. Constitution. (*Id.* at 3). Lastly, Plaintiff requests that the Court refer Marrero to the USMS for "investigation for obstruction and interference," claiming that Marrero's acceptance of service on behalf of David "constitutes interference with federal process, [and] Plaintiff's constitutional rights." (*Id.* at 3, 4).

Breaking Ground and Project Renewal submitted their oppositions to the Third Motion to Compel on April 21, 2026, and April 24, 2026, respectively. (Dkt. Nos. 120, 121). Both entities generally argue that they have no obligation to "identify, locate, or facilitate service on an alleged co-defendant under these circumstances," and that they do not possess the information required to serve David because they have "no control over Union Hall." (Dkt. No. 121 at 2, 3; Dkt. No. 120 at 2 ("Breaking Ground has no access to, or authority over Union Hall and its business records and employees.")). Sexton submitted a reply to Project Renewal and Breaking Ground's responses on May 26, 2026. (Dkt. No. 125).

In the meantime, on February 25, 2026, the Court denied Sexton's First Motion to Compel. (Dkt. No. 109). The Court's Order noted that the information provided by Plaintiff was insufficient to allow the USMS to serve McBride and Henderson and that, despite having ample time to do so, Plaintiff had not supplemented this information. (*Id.* at 1). The Order further noted that although Sexton is entitled to rely on the USMS to effectuate service, "he must provide the information necessary for the Marshal to serve the defendant." (Dkt. No. 109 at 2 (cleaned up)).

Sexton filed a motion to vacate the Court's decision on March 1, 2026. (Dkt. No. 110). On April 28, 2026, Judge Ho denied Sexton's motion to vacate. (Dkt. No. 122). Judge Ho explained that the public agencies mentioned in Sexton's motion are not parties to this case and that therefore the Court "has no authority to compel them to do anything with respect to disclosure of personal identifying information

needed for an action they are not party to." (*Id.* at 5). In addition, Judge Ho found that Plaintiff "ha[d] made no showing that any of the institutional defendants that remain in this matter have any connection to Defendants McBride or Henderson." (*Id.*). Judge Ho "welcome[d]" Plaintiff to request "any remaining defendant to assist him in identifying the addresses of Defendants McBride and Henderson," and noted that "those defendants may make any proper objections," but found that the undersigned's order was neither "clearly erroneous" nor "contrary to law." (*Id.* at 5).

In his April 28, 2026 Order, Judge Ho also reminded Plaintiff that "service on defendants is the responsibility of the Plaintiff," noted that "the record show[ed] no attempts to serve Defendants McBride or Henderson . . . since July 17, 2025," and affirmed that "it is the responsibility of the Plaintiff to provide accurate information to the United States Marshal's Service for service, and Plaintiff ha[d] not supplemented the information originally provided." (*Id.* at 4). Judge Ho required Plaintiff to effectuate service on McBride and Henderson by July 27, 2026, or "the Court [would] dismiss those Defendants without prejudice." (*Id.* at 6).

A day after the time to serve McBride and Henderson expired, Sexton submitted a motion styled as a request for an extension of time to respond to Judge Ho's April 28, 2026 Order. (Dkt. No. 133 ("Motion for Extension")). Given the substance of the motion, however, the Court interprets it as requesting an extension of the time to serve McBride, Henderson, and David. (*See id.* at 1 (citing Fed. R. Civ. P. 4(m)). Plaintiff argues he has "continuously attempted to prosecute this action," but "[a]s a litigant proceeding *in forma pauperis*, [] Plaintiff has neither the

legal authority nor the financial means to obtain confidential employment information independently." (*Id.* at 2, 3). Sexton further argues that he "cannot *subpoena* confidential personnel files before service, cannot compel nonparties to disclose protected employment records, and cannot independently discover last-known addresses." (*Id.* at 4). As a consequence, Sexton asks the Court to "permit additional time, require reasonable assistance in identifying and locating the individual defendants, and ensure that the Plaintiff is not deprived of his claims because of procedural circumstances beyond his control." (*Id.*). Breaking Ground and Project Renewal submitted responses to Plaintiff's Motion for Extension on August 3 and 7, 2026, respectively. (Dkt. Nos. 135, 136). Westhab and VOA did not submit responses to this motion.

## DISCUSSION

The Court addresses below: (1) Sexton's requests in his Second and Third Motions for information assisting him in serving the Individual Defendants; (2) Sexton's miscellaneous requests for relief in the Third Motion to Compel; (3) and Sexton's Motion for Extension requesting an extension of time to serve the Individual Defendants.

### A. Requests to Compel Identifying Information

The Court first reaffirms the principle, as recognized by prior Orders in this case, that "it is the responsibility of the Plaintiff to provide accurate information to the United States Marshal's Service for service." (Dkt. No. 122 at 4; *see also* Dkt. No. 109 at 2 (Sexton "must provide the information necessary for the [USMS] to

serve the Defendant" (quoting *Redd v. Phillips*, 348 F. App'x 606, 607 (2d Cir. 2009)))); *see also Ruddock v. Reno*, 104 F. App'x. 204, 206 (2d Cir. 2004) (explaining that a litigant must provide "information necessary to identify the defendant"); *Edwards v. Dow Ctr.*, No. 23 Civ. 4850 (DG) (JRC), 2023 WL 7351103, at *1 (E.D.N.Y. Oct. 6, 2023) ("[A] plaintiff proceeding *in forma pauperis* must provide the Court with an accurate address for service of process in order for the Court to have service effected on plaintiff's behalf by the USMS."). It is Plaintiff's ultimate responsibility—not the responsibility of Defendants, the Court, or USMS—to provide the USMS with information necessary to serve the Individual Defendants. To date, Plaintiff has not given the USMS any alternative service addresses, though the Court recognizes that Plaintiff's ability to identify proper service addresses is limited.

"Federal district courts have broad discretion in deciding motions to compel." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, "a court cannot compel production of records that are not in the possession, custody, or control of a party." *Tapjets Inc. v. United Payment Servs., Inc.*, No. 19 Civ. 3740 (RRM) (VMS), 2020 WL 13581674, at *8 (E.D.N.Y. Sept. 17, 2020). "When a party contests that it has possession, custody and control of the relevant information, the requesting party has the burden of establishing

possession, custody and control." *Signify Holding B.V. v. TP-Link Rsch. Am. Corp.*, No. 21 Civ. 9472 (JGK) (KHP), 2022 WL 3704001, at *3 (S.D.N.Y. Aug. 26, 2022).

In *pro se* cases where the plaintiff is proceeding IFP, courts in this Circuit frequently issue orders pursuant to *Valentin v. Dinkins,* 121 F.3d 72, 75 (2d Cir. 1997), requiring an entity defendant to provide identifying information about a named individual defendant who is (or was) an employee of the entity. "Although *Valentin* orders are typically addressed to governmental defendants, requesting assistance in identifying individual law enforcement officers or other government employees, some district courts have employed the same device to ask corporate defendants to identify their employees or provide service addresses for them." *Mitchell v. Stitch Indus. Inc.*, No. 26 Civ. 3513 (MMG) (BCM), 2026 WL 1256858, at *2 (S.D.N.Y. May 7, 2026).

The Court turns to Plaintiff's requests to compel various entities that allegedly employed the Individual Defendants to provide information that can assist in effecting service. As set forth below, Plaintiff's motion is denied as to Help USA, VOA, Breaking Ground, and Project Renewal, but granted as to Westhab.

**1. Help USA**

As an initial matter, Help USA is no longer a party to this action, having been dismissed in Judge Ho's the May 7, 2025 Order of Service (*see* Dkt. No. 22 at 22). Thus, as noted in Judge Ho's April 28, 2026 Order, the Court has "no authority to compel [nonparties such as Help USA] to do anything with respect to disclosure of personal identifying information needed for an action they are not party to."

(Dkt. No. 122 at 5). Plaintiff's Second Motion to Compel with respect to Help USA is therefore denied.

**2. VOA, Breaking Ground, and Project Renewal**

Similarly, VOA, Breaking Ground, and Project Renewal are not parties to this action anymore. At the time Sexton filed his motions to compel, those entities were still defendants. However, VOA, Breaking Ground, and Project Renewal each submitted motions to dismiss the claims against them, and on August 19, 2026, Judge Ho adopted the undersigned's July 30, 2026 Report & Recommendation recommending that their motions to dismiss be granted. (Dkt. Nos. 134 ("R&R"), 137).

One of the reasons why Plaintiff's claims against VOA, Breaking Ground, and Project Renewal were dismissed from this action is that those entities provided evidentiary support that they do not and did not operate the shelters where McBride and David allegedly were employed. As discussed more thoroughly in the R&R, affidavits submitted by VOA, Breaking Ground, and Project Renewal in connection with their motions to dismiss "establish that they have no relation to the shelters or alleged wrongdoing at issue in the complaint." (R&R at 29). Breaking Ground and Project Renewal make that same argument in their responses to Sexton's Third Motion to Compel. (Dkt. No. 120 at 3 ("It is irrefutable . . . that Breaking Ground does not own, lease, or operate any of the shelters that are the subject of the instant lawsuit."); Dkt. No. 121 at 3 ("Project Renewal has no control over Union Hall, and its records search revealed no record of Plaintiff.")). The same

arguments and evidence that counseled in favor of dismissal counsels in favor of denying Sexton's motions to compel with respect to those three entities.

Beyond the conclusory statement that the shelter entities are "are in control of employment records," Plaintiff provides nothing to refute the showing made by Breaking Ground, Project Renewal, and VOA that they do not have any knowledge of, or access to, the information Plaintiff seeks. (Dkt. No. 103 at 2; *see also* Dkt. No. 94 at 1 (conclusorily stating that "[t]he shelter-operating Defendants, who possess the identifying information, have instead withheld it"); R&R at 32 (explaining that "neither the Complaint, the documents attached to the Complaint, nor Sexton's opposition briefs contain any non-conclusory allegations refuting or disputing the showing made in Defendants' affidavits")).

While "discovery may be necessary before a defendant may be fully identified," *Valentin,* 121 F.3d at 75, the Court cannot grant a motion to compel where a party (in this case, a former party) has put forth evidence that it would not have the requested discovery. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("[A] party is not obliged to produce . . . documents that it does not possess or cannot obtain."); *Franks v. City of New Rochelle*, No. 24 Civ. 539 (KMK) (VR), 2024 WL 1636456, at *4 (S.D.N.Y. Apr. 16, 2024) ("[T]he Court cannot order a party to produce a document that does not exist."); *see also, e.g., Brown v. Coleman*, 514 F. App'x 6, 9 (2d Cir. 2013) (affirming denial of motion to compel because party submitted sworn declaration stating that records were destroyed in "regular course of business" before lawsuit filed).

Sexton's reliance on *Valentin v. Dinkins*, as against the three former Defendant entities, is misplaced. Sexton argues that "Defendants improperly mischaracterize *Valentin v. Dinkins* by arguing that judicial assistance applies only after the Plaintiff independently proves operational structures and employer relationships without discovery or judicial intervention," which constitutes an "improper[] attempt to rewrite *Valentin* into an impossible procedural standard requiring complete factual certainty before any assistance may occur." (Dkt. No. 125 at 3, 4). But *Valentin* orders, whether in the usual case when issued to a governmental defendant or in the rare instances when issued to a private party, presuppose that the entity has the ability to obtain information identifying the individual because the individual was employed by the entity. *See, e.g., Peterec v. TGI Fridays, Inc.*, No. 23 Civ. 8028 (KMK), 2023 WL 6960347, at *2 (S.D.N.Y. Oct. 19, 2023) (issuing *Valentin* order requiring TGI Fridays Franchisor LLC to identify certain employees that worked at specific TGI Fridays location between 2022 and 2023). In contrast, Sexton provides no non-conclusory allegations that VOA, Breaking Ground, or Project Renewal operate the shelters at issue in this case, or employ McBride or David, and the entities have established that they do not.

Accordingly, Sexton's motion to compel is denied as to VOA, Breaking Ground, and Project Renewal.

### 3. Westhab

Sexton's request to compel Westhab to produce identifying information related to Henderson presents a different set of circumstances. Westhab, unlike the

other now-former Defendants, did not submit a motion to dismiss, nor did it submit any evidence suggesting that it has no relation to Henderson or Willow Men's Shelter, where Henderson allegedly worked. In fact, counsel for Westhab submitted its response to Plaintiff's motion on behalf of Westhab and Willow Men's Shelter, despite the fact that the latter entity was dismissed in May 2025. (*See* Dkt. No. 98). Instead, Westhab argues that the Second Motion to Compel should be denied "because Plaintiff has failed to participate in any discovery to date, failing to even provide [a discovery] demand[] to [Westhab] regarding" Henderson. (*Id.* at 1).

The Court recognizes that some courts in this Circuit have held that "[t]he Court may not properly order defendants to produce documents they were never requested to produce through a properly-served discovery request." *Funderburke v. Canfield*, No. 13-CV-6128G, 2014 WL 6390577, at *1 (W.D.N.Y. Nov. 7, 2014). However, in light of the special solicitude granted to *pro se* plaintiffs and the interests of judicial economy, the Court shall not deny Plaintiff's motion on this ground. Whether or not Sexton made a formal discovery request, the Court has the authority to order Westhab to provide identifying information for Henderson, including by exercising its discretion to issue a *Valentin* order. *See, e.g.*, *Doe # 1 v. 2001 Arthur LLC*, No. 24 Civ. 9542 (RA), 2025 WL 831594, at *1 (S.D.N.Y. Feb. 11, 2025) (issuing *Valentin* order directing private entity defendant to ascertain and provide to the *pro se* plaintiff "the identity of the John Doe [employee] whom [p]laintiff seeks to sue here and the address where the defendant may be served"); *Peterec*, 2023 WL 6960347, at *2 (directing corporate defendant to ascertain and

provide to the *pro se* plaintiff "the service address for Defendant Alvarez, as well as the identities and service addresses for the other two unidentified Defendants mentioned in [the complaint]"); *see also Emps. Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*, No. 05 Civ. 620 (JFB) (MD), 2006 WL 1120632, at *2 (E.D.N.Y. Apr. 26, 2006) (rejecting argument that motion to compel should be denied on the ground that "defendants never made a formal Rule 34 request for documents").

Because Henderson's identifying information is relevant to Sexton's prosecution of this action, Sexton's Second Motion to Compel is granted with respect to Westhab and information regarding Henderson.[2] Westhab shall complete a reasonable search to ascertain Henderson's identity and a service address for Henderson, provide this information to Sexton within 30 days of this Opinion & Order, and file a letter on the docket stating when the information was provided. Should Westhab be unable to find such identifying information for Henderson, or determines that Henderson was not employed at Willow Men's Shelter or by Westhab, Westhab shall file a letter stating as much, and describing the measures undertaken to find relevant information.

**B. Sexton's Other Service-Related Requests**

In the Third Motion to Compel, Sexton asks for the following additional relief: declaring the September 12, 2025 service on David "defective" due to delivery

[2] To be sure, Westhab points out that, in the USM-285 form related to Henderson states that Henderson "does not work at location or DHS." (Dkt. No. 98 at 2). However, this does not mean, and Westhab does not argue, that Henderson *never* worked at Willow Men's Shelter, or that Westhab has no identifying information regarding that individual.

to "Matthew Marrero"; declaring that the prolonged service delay has violated Plaintiff's due process rights under the U.S. Constitution; and "[r]eferring the conduct of [Marrero] for investigation for obstruction and interference." (Dkt. No. 103 at 3–4). Sexton's assertion that David has not been properly served in this action is correct, but Sexton's requests are otherwise without merit.

Sexton states that David "was never actually notified or served" with the Summons and Complaint. (*Id.* at 2). The Court agrees. Under Federal Rule of Civil Procedure 4(e), an individual must be served either by "following state law for serving a summons," "delivering a copy of the summons and [] complaint to the individual personally," "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(1)–(2). New York law allows for service by delivering the summons within the state "to a person of suitable age and discretion at the actual place of business," in conjunction with mailing the summons to the person to be served at their last known residence or actual place of business. N.Y. C.P.L.R. § 308(2).

Here, the USMS attempted to effect service by delivering the summons and complaint to Union Hall, David's last-known place of business according to Plaintiff. (*See* Dkt. No. 1 at 8 (alleging that David is a supervisor at Union Hall); Dkt. No. 68 (USM-285 form)). However, it is unclear whether David worked at Union Hall at the time of service. Moreover, even if Union Hall is David's current employer, the

Summons and Complaint were not mailed to his last known residence, as Plaintiff has not provided any home address for David. Nor were the documents successfully mailed to Union Hall. (*See* Dkt. No. 68 (stating that package containing summons and complaint was "returned as undeliverable")). Hence, Plaintiff has not properly served David as of the date of this Opinion & Order.

Nonetheless, to the extent that Plaintiff claims that the failure to serve David violates his due process rights, or that the delay stemming from failure to serve compromises his "constitutional right to timely adjudication," he is mistaken. (Dkt. No. 103 at 2). As noted above, it is Plaintiff's responsibility to provide David's address so that the USMS may effect service. There is no basis for any claim of a due process violation. *See, e.g.*, *Washington v. Correia*, 546 F. App'x. 786, 788–89 (10th Cir. 2013) (rejecting *pro se* plaintiff's argument that dismissal of his complaint for failure to effect service violated his due process rights, and noting that "the onus [is] squarely [placed] on plaintiffs to track down the whereabouts of defendants to effectuate service—rather than obliging the courts to assist in this endeavor—even when the plaintiffs are in prison").

Lastly, Plaintiff argues that the Court should refer Marrero's conduct for investigation because he accepted the service package delivered by the USMS to the Union Hall Safehaven Shelter. (Dkt. No. 103 at 3). Plaintiff asserts that Marrero's conduct "constitutes interference with proper service of process because it creates the false appearance that service has been completed when, in fact, Rule 4 has not been satisfied." (*Id.*). Plaintiff provides no authority, and the Court finds none,

allowing the Court to refer the seemingly harmless conduct of a nonparty to the USMS for a generalized "investigation." *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), Plaintiff's only case in support of his request, is inapposite. *See id.* at 35 (explaining that federal courts have inherent power to "sanction a *litigant* for bad-faith conduct" (emphasis added)). Plaintiff's request for an investigation of Marrero is denied. Consequently, Sexton's Third Motion to Compel is denied in full.

**C. Plaintiff's Request for an Extension**

The Court next considers Sexton's request for a 30-day extension to serve Henderson, McBride, and David.[3] (Dkt. No. 133). Rule 4(m) requires that a defendant be served "within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m). "*Pro se* plaintiffs are not excused from compliance with Rule 4." *George v. Roberts*, No. 17 Civ. 3684 (CS), 2018 WL 1517203, at *2 (S.D.N.Y. Mar. 26, 2018). "But if [a] plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). "The Second Circuit has interpreted this rule to give courts considerable flexibility in deciding whether to extend time for service." *New York 555 LLC v. 1055 Park Ave PH LLC*, No. 25 Civ. 1823 (DEH) (KHP), 2025 WL 3231923, at *2 (S.D.N.Y. Nov. 18, 2025) (citing *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007)). "Good cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice to the

[3] Judge Ho's Order only discussed service on McBride and Henderson. (*See* Dkt. No. 122 at 6). However, given that the prior attempt at service of David was ineffective, the Court includes David in its analysis as well.

defendant from the delay." *Id.* (quoting *AIG Managed Mkt. Mut. Fund v. Askin Cap. Mgmt.*, L.P., 197 F.R.D. 104, 108 (S.D.N.Y. 2000)).

The Court finds that Plaintiff has shown good cause with respect to extending the time to serve Henderson. First, Sexton has shown reasonably diligent efforts to serve Henderson. After the USMS was unable to effect service upon Henderson on July 17, 2025 (*see* Dkt. No. 50), Sexton promptly filed his First Motion to Compel on July 22, 2025, seeking information that would allow him to serve Henderson. (*See* Dkt. No. 54 at 2). On November 13, 2025, while a ruling on his First Motion to Compel was outstanding, Sexton filed the Second Motion to Compel, again requesting information that would allow him to serve Henderson. (*See* Dkt. No. 94 at 3). Although Sexton did not take other affirmative steps to effect service in the following months, his inaction is reasonable given his *pro se* status and his two pending motions to compel related to serving Henderson; the first of which was not ruled on until February 25, 2026 (*see* Dkt. No. 109). *See Wiseman v. 7-Eleven, Inc.*, No. 14-CV-114A, 2014 WL 3037265, at *4 (W.D.N.Y. July 2, 2014) (excusing failure to timely serve defendant where court had not ruled on plaintiff's motion to amend the complaint). In fact, without the identifying information he sought in his motions to compel, it likely would have been "impossible to serve" Henderson until his name was discovered. *New York 555 LLC*, 2025 WL 3231923 at *2.

In addition, Sexton submitted his request for an extension on July 28, 2026, a day after the July 27, 2026 deadline in Judge Ho's April 2026 Order. (*See* Dkt. No.

133). While technically untimely, a one-day delay is not long, and the record does not show any bad faith on Sexton's behalf with respect to the untimely request.[4] *See Laina v. United Cerebral Palsy of New York City, Inc.*, No. 11 Civ. 3983 (SJ) (MDG), 2012 WL 28291, at *2–3 (E.D.N.Y. Jan. 5, 2012) (one-day delay between deadline to answer and filing of motion for extension excusable).

Moreover, prejudice to Henderson (or Westhab) is limited. There has been a minimal exchange of discovery in this action (*see* Dkt. No. 98 at 3), and discovery was then stayed per the March 25, 2026 status conference. (*See* Dkt. No. 123 at 9:14–15). Sexton's claims against Henderson and Westhab arising from his time at the Willow Men's Shelter are thus still at a relatively early stage of litigation. *See Blanco v. Success Acad. Charter Schs., Inc.*, 722 F. Supp. 3d 187, 207 (S.D.N.Y. 2024) (risk of prejudice limited because, *inter alia*, parties were in early stage of litigation, discovery had been stayed pending resolutions of motions to dismiss, and it was more efficient to include unserved defendant in active case). Indeed, Westhab did not oppose or otherwise respond to Plaintiff's Motion for Extension. In light of Plaintiff's reasonable diligence to serve Henderson, Plaintiff's *pro se* status, and the lack of discernible prejudice, the Court finds that Plaintiff has shown "good cause" for an extension within the meaning of Fed. R. Civ. P. 4(m). Plaintiff's time

[4] In fact, Sexton's motion for an extension of time is dated July 27, 2026 in the signature line, indicating that delays outside of his control may have limited his ability to timely file his request. (*See* Dkt. No. 133 at 5).

to serve the summons and complaint on Henderson is extended an additional 60 days from the date of entry of this Opinion & Order.

However, Sexton has not shown good cause to extend the time to serve McBride and David. As outlined in the R&R, the Court has dismissed both of Plaintiff's remaining claims against VOA, Project Renewal, and Breaking Ground, for violations of the Fair Housing Act ("FHA") and 42 U.S.C. § 1981. In making that determination, the Court found that Sexton could not state a claim under the FHA's discrimination or retaliation provisions because he was not a "buyer" or "renter" within the meaning of the statute. (R&R at 12–15). The Court further found that Sexton failed to state a claim for discrimination or retaliation under 42 U.S.C. § 1981 because the conduct attributable to VOA, Project Renewal, and Breaking Ground—which was based on the alleged actions of McBride and David—was not protected by that statute. (*Id.* at 16–29). While the Court analyzed Sexton's claims in the context of the three corporate entities, the rationale for dismissing those claims applies with equal force to McBride and David. And Sexton failed to submit an amended complaint by the September 18, 2026 deadline (*see* Dkt. No. 137 at 2), which bars him from curing his pleading deficiencies absent leave of Court.

"[W]here the allegations against the defendant fail to state a viable claim, an extension [of the time for service] would be futile and should not be granted." *Hahn v. Off. & Pro. Emps. Int'l Union, AFL-CIO*, 107 F. Supp. 3d 379, 382 (S.D.N.Y. 2015) (citation omitted). That is the case here. The prejudice to McBride and David in litigating an action where the claims against them are futile necessitates a finding

that good cause does not exist to grant Sexton's requested extension. *See Strickland v. Hongjun*, No. 10 Civ. 5445 (MGC), 2011 WL 2671895, at *3 (S.D.N.Y. July 8, 2011) (denying motion to extend time to serve defendants where "any extension of time to effect service would simply postpone an eventual dismissal for failure to state a claim upon which relief can be granted"), *aff'd sub nom. Drobner v. Bruce*, 531 F. App'x 96 (2d Cir. 2013). Sexton's motion for an extension of time to serve McBride and David is therefore denied.

**D. Plaintiff's Incorrect Citations**

Breaking Ground and Project Renewal point to several citations in Plaintiff's Third Motion to Compel in which the cases cited do not stand for, or relate to, the cited proposition. (*See* Dkt. No. 120 at 4; Dkt. No. 121 at 2). The Court has confirmed that this is the case. For example, Plaintiff cites "*Davila v. Gutierrez*, 330 F. App'x 125, 127 (2d Cir. 2009)," as a case where a court "compell[ed] identification of [a] John Doe defendant . . . and permitt[ed] substitution." (Dkt. No. 103 at 2). While there is a case in this Circuit by that name, the decisions published in that case do not involve any issue pertaining to identifying John Doe defendants. *See Davila v. Gutierrez*, 330 F. Supp. 3d 925, 932 (S.D.N.Y. 2018), *aff'd*, 791 F. App'x 211 (2d Cir. 2019). Moreover, there is no decision, in this Circuit or otherwise, at 330 F. App'x 125, and the decision most closely encompassing the citation Plaintiff used for *Davila*, *United States v. City of Santa Monica*, 330 F. App'x 124 (9th Cir. 2009), is a Ninth Circuit decision that also is unrelated to this issue. As another example, Sexton's Third Motion to Compel cites "*Board of*

*Trustees v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000)," for the proposition that "defendants cannot obstruct discovery or hide witnesses necessary to service." (Dkt. No. 103 at 2). But that opinion discusses jurisdictional issues, not any issues concerning discovery or service of process. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031 (7th Cir. 2000).

As is now well known, artificial intelligence programs can sometimes generate fake case citations or other misstatements of law. The Court does not know whether Plaintiff generated these citations through use of an AI tool. Regardless, "[s]ubmitting fake citations to a court is unacceptable, whether engaged in by an attorney or a *pro se* litigant," and can lead to the imposition of sanctions. *Ng v. AmGUARD Ins. Co.*, No. 25 Civ. 806 (VSB) (GS), 2025 WL 3754555, at *7 (S.D.N.Y. Dec. 29, 2025); *see Dukuray v. Experian Info. Sols.*, No. 23 Civ. 9043 (AT) (GS), 2024 WL 3812259, at *11–12 (S.D.N.Y. July 26, 2024), *R&R adopted*, 2024 WL 3936347 (S.D.N.Y. Aug. 26, 2024). The Court warns Sexton that, moving forward, he must take care to ensure that his citations are accurate before submitting documents to the Court and that any future filings with citations to nonexistent cases may result in sanctions.

## CONCLUSION

In sum, Plaintiff's Second Motion to Compel (Dkt. No. 94) is **GRANTED** as to Westhab, regarding identifying information of Henderson, and **DENIED** as to VOA and Help USA. Plaintiff's Third Motion to Compel (Dkt. No. 103) is **DENIED** in its entirety, except that the Court notes that the prior attempt at service on Defendant

David was ineffective. Plaintiff's Motion for Extension of time to serve the Individual Defendants (Dkt. No. 133) is **GRANTED** as to Henderson, and **DENIED** as to David and McBride. The Court extends Plaintiff's time to serve Henderson by 60 days from entry of this Opinion & Order. The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 94, 103, and 133.

**SO ORDERED.**

DATED: New York, New York
September 30, 2026

Gary Stein

The Honorable Gary Stein
United States Magistrate Judge